# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

NATIONWIDE PROPERTY     )
CASUALTY INSURANCE     )
COMPANY,     )
    )
         Plaintiff,     )
    v.     )     C.A. No.: N18C-02-167 PRW
    )
ANGEL IRIZARRY, JR.,     )
    )
         Defendant.     )

Submitted: November 21, 2019
Decided: January 31, 2020

*Upon Plaintiff Nationwide Property & Casualty Insurance Company's*
*Motion for Summary Judgment,*
**DENIED**.

## MEMORANDUM OPINION AND ORDER

Louis J. Rizzo, Esquire, Reger Rizzo & Darnall LLP, Wilmington, Delaware, Attorney for Plaintiff.

Scott E. Chambers, Esquire, Gary E. Junge, Esquire, Schmittinger & Rodriguez, P.A., Dover, Delaware, Attorneys for Defendant.

**WALLACE, J.**

Plaintiff, Nationwide Property & Casualty Insurance Company brings this declaratory judgment action against Defendant, Angel Irizarry, Jr., seeking to affirm Nationwide's denial of coverage obligation to Mr. Irizarry for uninsured/underinsured ("UI/UIM") motorist benefits. Mr. Irizarry counterclaims for declaratory judgment that UI/UIM benefits are available to him.

Currently before the Court is Nationwide's Motion for Summary Judgment. The parties seek the Court's determination whether policy provisions purporting to preclude payment are valid and enforceable, or whether they are precluded pursuant to Delaware's UM statute ("§ 3902") and its UIM subsection ("§ 3902(b)").[1]

For the reasons stated below, Nationwide's summary judgment motion is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Nationwide and Mr. Irizarry do not dispute the material facts in this action and jointly submitted a "Statement of Undisputed Material Facts and Procedural History" setting forth those uncontested facts as set forth below.[2] This Stipulation includes the undisputed text of the subject insurance policy.

---

[1] DEL. CODE ANN., tit. 18 § 3902 (2018).

[2] D.I. 16 [referred to and cited hereinafter as "Stipulation"].

## A. FACTUAL BACKGROUND

Luis Velez obtained an automobile insurance policy[3] from Nationwide on December 9, 2016.[4] Mr. Velez, solely through his own negligence, lost control of the insured vehicle while driving it on April 2, 2017, causing a one-vehicle accident on Barley Mill Road in New Castle, Delaware.[5] Mr. Irizarry was an innocent passenger in the vehicle and sustained an injury to his right hand.[6] The Policy covered Mr. Irizarry as a guest passenger.[7] This coverage includes personal injury, bodily injury, and UM/UIM coverage.[8]

The Policy's UIM provision extends the definition of "uninsured motor vehicle" to include:

> "[O]ne which is underinsured. This is a **motor vehicle** for which there may be bodily injury liability coverage in effect, but the limits of bodily injury liability coverage under all bonds and insurance policies applicable at the time of the accident are less than the damages sustained by the **insured**."[9]

---

[3] Stipulation, Ex. A [referred to and cited hereinafter as the "Policy"].

[4] Stipulation ¶ 1.

[5] *Id.* ¶¶ 3, 5.

[6] *Id*. ¶¶ 3-4.

[7] *Id.* ¶ 6.

[8] *Id*. ¶ 2.

[9] Policy, at U2. Bold words occur in the original, and indicate terms defined in the Policy.

The Policy goes on to exclude from its definition "any **motor vehicle** insured under the liability coverage of this policy," and asserts that "[Nationwide] will make no duplicate payment to or for any **insured** for the same element of loss."[10]

Nationwide paid Mr. Irizarry's medical providers the Personal Injury Protection ("PIP") limit of $15,000,[11] and later settled a Bodily Injury ("BI") claim for the policy limit of $15,000 with Mr. Irizarry.[12] The BI claim settlement followed a demand letter from Mr. Irizarry through counsel for a sum larger than the policy limit.[13] Having exhausted those forms of coverage, Mr. Irizarry demanded UIM payment from Nationwide for the alleged excess.[14] Nationwide denied Mr. Irizarry's UIM claim via letter. According to Nationwide, Mr. Irizarry could not combine UIM and BI coverage as the passenger in a one-car accident.[15]

---

[10]     *Id.*

[11]     Stipulation ¶ 8.

[12]     *Id.* ¶11.

[13]     *Id.* ¶¶ 9-11.

[14]     The parties stipulate only that Mr. Irizarry asserts damages and demands compensation over and above the $30,000 Nationwide already paid. Whether Mr. Irizarry's injuries actually exceed that amount is a disputed factual question not resolved here.

[15]     *Id.* at 13.

## B.  PROCEDURAL HISTORY

Nationwide commenced this action seeking a declaratory judgment supporting its denial decision.[16]  Mr. Irizarry answered the Complaint with a counterclaim.[17]

After submitting the Stipulation, the parties submitted their respective briefs on Nationwide's Motion for Summary Judgment.[18]  Following argument, the Court reserved decision and later received certain requested and unsolicited supplemental submissions.[19]

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when the record shows no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.[20] The record is viewed in the light most favorable to the non-movant,[21] as the purpose of summary judgment is to determine whether genuine issues of material fact exist

---

[16]     *Id.* ¶ 15.

[17]     *Id.* ¶ 16.

[18]     *See* Nationwide Prop. & Cas. Ins. Co.'s Br. in Supp. (D.I. 17) [hereinafter "Nationwide's Br."]; Angel Irizarry Br. in Opp'n. (D.I. 18).

[19]     *E.g.* Nationwide Prop. & Cas. Ins. Co.'s Ltr. Br. (D.I. 23) [hereinafter "Nationwide's Ltr."]; Angel Irizarry Ltr. Br. (D.I. 24); D.I. 27-28; D.I. 31; D.I. 33-34.

[20]     *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995) (citing Super. Ct. Civ. R. 56(c)).

[21]     *Jones v. Crawford*, 1 A.3d 299, 301-02 (Del. 2010).

rather than to resolve them.[22]  The Court accepts as true the factual stipulations of the parties.[23]

The proper construction of a contract is purely a question of law.[24]  "[W]hen the language of an insurance contract is clear and unequivocal, a party will be bound by its plain meaning because creating an ambiguity where none exists could, in effect, create a new contract with rights, liabilities and duties to which the parties had not assented."[25]  "A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction. Rather, a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings."[26]  The true test of a contract's potential ambiguity is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant.[27]

---

[22]  *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 99 (Del. 1992) (citing *United States v. Diebold, Inc.*, 369 U.S. 654 (1962)).

[23]  *S. G. Williams of Dover, Inc. v. Diamond State Vinyl, Inc.*, 430 A.2d 794, 796 (Del. Super. Ct. 1981).

[24]  *Aetna Cas. & Sur. Co. v. Kenner*, 570 A.2d 1172, 1174 (Del. 1990).

[25]  *Hallowell v. State Farm Mut. Auto. Ins. Co.*, 443 A.2d 925, 926 (Del. 1982).

[26]  *Rhone-Poulenc Basic Chems. Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992) (internal citation omitted).

[27]  *Steigler v. Ins. Co. of North America*, 384 A.2d 398, 401 (Del. 1978).

Lastly, this Court applies settled principles of statutory interpretation, giving effect to the plain language of an unambiguous statute, and applying the literal meaning of the statute's words.[28] "[T]he meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain . . . the sole function of the courts is to enforce it according to its terms."[29] A statute is ambiguous only if it is "reasonably susceptible to different interpretations, or if giving a literal interpretation to the words of the statute would lead to an unreasonable or absurd result that could not have been intended by the legislature."[30]

## III. DISCUSSION

On five occasions before five different judges, beginning with *Baunchalk v. State Farm*, this Court has applied and interpreted the interactions between § 3902(b) UIM coverage with other forms of coverage under the same policy when the victim is a passenger or pedestrian not expressly named in the policy.[31] In every case, this

---

[28] *See Arnold v. State*, 49 A.3d 1180, 1183 (Del. 2012) (citing *Dennis v. State,* 41 A.3d 391, 393 (Del. 2012)).

[29] *Friends of H. Fletcher Brown Mansion v. City of Wilmington*, 34 A.3d 1055, 1059 (Del. 2011) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)).

[30] *See Arnold*, 49 A.3d at 1183 (citing *Dennis,* 41 A.3d at 393).

[31] *Baunchalk v. State Farm Mutual Auto. Ins. Co.*, 2015 WL 12979117 (Del. Super. Ct. Oct. 26, 2015). The other cases are *Brown v. Everett*, 2019 WL 2361539 (Del. Super. Ct. Jun. 4, 2019); *Perez v. State Farm Mutual Auto. Ins. Co.*, 2018 WL 2473152 (Del. Super. Ct. Jun. 1, 2018); *Johnson v. State Farm Mutual Auto. Ins. Co.*, 2017 WL 4652061 (Del. Super. Ct. Oct. 16, 2017); and *Tillison v. GEICO Secure Ins. Co.*, 2017 WL 2209895 (Del. Super. Ct. May 15, 2017).

Court found § 3902(b) defines "underinsured" solely in terms of the magnitude of the injury the victim suffered relative to the total coverage paid out, irrespective of the source of those payments.[32] Where an innocent passenger of the policyholder-driver has injuries in excess of BI or PIP limits, the policyholder-driver's UIM coverage applies as well.[33]

This interpretation of has been consistent; any policy language putatively narrowing the coverage terms of a UIM policy governed by § 3902(b) is superseded and void.[34] This Court has specifically addressed both types of narrowing language Nationwide invokes here, finding both are superseded by and void under § 3902(b). Even while this matter was pending, the Court again addressed the types of contractual provisions Nationwide seeks to invoke to avoid payment. It again found them superseded by § 3902(b).[35]

---

[32] *Baunchalk*, 2015 WL 12979117 at *5. Under the "Unknown Phantom Vehicle" rule, UIM benefits may be combined with BI and PIP for hit-and-run cases with unidentified assailants, even prior to the 2013 amendments to § 3902. *Id.* at *2 (citing *Pankowski v. State Farm Mut. Auto. Ins. Co.*, 2013 WL 5800858 (Del. Super. Ct. Oct., 10, 2013)). Nationwide does not challenge this older rule, and premises its denial of UIM coverage on the accident in this case being single-vehicle. Stipulation ¶ 14.

[33] *Baunchalk*, 2015 WL 12979117 at *5.

[34] *Id.*

[35] *See Brown*, 2019 WL 2361539 at *2-3 (negating non-duplication clauses and contractual definitions of terms that would deny coverage these types of circumstances).

Nationwide concedes that *Baunchalk* and its progeny set mandatory minimum coverage terms for UIM clauses, that if the Court here applied its earlier precedents the additional UIM coverage for Mr. Irrizary is mandated, and therefore summary judgment for Nationwide would be precluded.[36]

## A.   *STARE DECISIS'S* ROLE IN CONSTRUING § 3902(b) HERE.

The doctrine of *stare decisis* in Delaware provides that a point of law settled by a judicial decision is thereafter controlling precedent for the same Court and is to be reexamined only upon a showing of both (1) "urgent reason" and (2) a "clear manifestation of error."[37]  Of course, while not done lightly, such a decision—and those of the same Court following it—may be departed from, overruled, or set aside by a higher appellate tribunal.[38]  But undoubtedly, deference to prior decisions is a

---

[36]    *See* Nationwide's Br., at 14 ("In sum, these cases conclude that policy provisions designed to limit UM/UIM coverage, such as the "non-duplication clause" at issue in this case, are contrary to public policy.").

[37]    *Oscar George, Inc. v. Potts*, 115 A.2d 479, 481 (Del. 1955).

[38]    *See Gatz Properties, LLC v. Auriga Capital Corp.*, 59 A.3d 1206, 1219 (Del. 2012) ("It is axiomatic, and we recognize, that once a trial judge decides an issue, other trial judges on that court are entitled to rely on that decision as *stare decisis*. Needless to say, as an appellate tribunal and the court of last resort in this State, we are not so constrained.") (internal citations omitted). It is likewise elementary to the structure of the American legal system that lower courts are absolutely bound by prior decisions of law made by *higher* courts, even if those prior decisions are manifestly improper. *E.g. Gebhart v. Belton*, 87 A.2d 862, 865 (Del. Ch. 1952) (Chancellor Seitz expressing and supporting the view that the 'separate but equal' doctrine laid down by the United States Supreme Court in *Plessy v. Ferguson* was contrary to the United States Constitution, but nevertheless inescapably binding on lower courts); *see also Brown v. Bd. of Education of Topeka*, 347 U.S. 483, 494-95 (1954) (approving of the Chancellor's analysis in *Gebhart* on appeal, and overruling *Plessy*).

necessary manifestation of the principle that individuals must be afforded "an opportunity to know what the law is and to conform their conduct accordingly."[39] The United States Supreme Court has gone so far as to describe *stare decisis* as being "of fundamental importance to the rule of law."[40]

Of particular note here: the *Baunchalk* line of cases are decisions on statutory interpretation. Any concerted judicial misconstruction of a statute is subject to corrective tuning by the legislature, and thus prior statute-interpreting rulings gain approving harmony from ensuing legislative silence.[41] The Court in *Baunchalk*-type innocent-passenger cases has previously answered Delaware insurers' policy arguments by urging them "to pursue legislative clarification," since the statutory language is unambiguous and controlling.[42]

---

[39] *State v. Barnes*, 116 A.3d 883, 891 (Del. 2015) (quoting *Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994)); *Oscar George, Inc.,* 115 A.2d at 481 (*Stare decisis*'s "support rests upon the vital necessity that there be stability in our courts in adhering to decisions deliberately made after careful consideration.").

[40] *Hilton v. South Carolina Public Railways Comm'n*, 502 U.S. 197, 202 (1991) (quoting *Welch v. Texas Dep't of Highways and Public Transp.*, 483 U.S. 468, 494 (1987)); *Payne v. Tennessee,* 501 U.S. 808, 827 (1991) (*Stare decisis* is "the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.").

[41] *See Barnes*, 116 A.3d at 892; *see also Illinois Brick Co. v. Illinois*, 431 U.S. 720, 736 (1977) ("[C]onsiderations of stare decisis weigh heavily in the area of statutory construction, where Congress is free to change this Court's interpretation of its legislation.").

[42] *Tillison v. GEICO*, 2017 WL 2209895, at *3.

## B.  NATIONWIDE'S INVOCATION OF *STATE FARM v. KELTY*.

Nationwide urges the Court to view the UIM coverage under the Policy as a supplemental policy offering excess coverage outside of the strictures of § 3902(b) entirely.[43]  Nationwide interprets *Baunchalk* as forbidding excess UIM policies outside of the narrow terms permitted by § 3902(b), which in its view contravenes Delaware public policy encouraging insurance coverage and protecting freedom of contract.[44]

Nationwide relies heavily on *State Farm v. Kelty*, which addressed supplemental clauses.[45]  The *Kelty* policy included an excess PIP provision with a pedestrian exclusion that itself made an exception for family members of the insured.[46]  Such exclusions would be invalid on baseline PIP coverage, but the *Kelty* Court found that, because the policy at issue contained baseline coverage with a conforming PIP clause up to the minimum requirement, the *excess* PIP clause could

---

[43]     *See* Nationwide's Ltr., at 2. (arguing that "Limitations on excess coverage that do not restrict policyholders from obtaining additional coverage at market price are not a cause for concern under the UM/UIM statute.") (citations omitted).

[44]     *Id*. at 3 (citing *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 118 A.3d 175, 180 (Del. 2015)).

[45]     *State Farm Mutual Auto. Ins. Co. v. Kelty*, 126 A.3d 631 (Del. 2015).

[46]     *Id*. at 634.

permissibly include limitations and exclusions that would be impermissible for baseline PIP.[47]

Nationwide emphasizes that UIM coverage: (a) is supplemental and optional—not compulsory like no-fault insurance generally; (b) is opt-in rather than opt-out;[48] and (c) permits motorists to obtain varying levels of coverage, down to nothing at all.[49] As purely excess coverage, Nationwide argues that *Baunchalk* and its progeny erred by failing to recognize *Kelty* controls, and thereby permits insurer and insured to negotiate more limited UM/UIM coverage than § 3902(b).[50]

## C. NATIONWIDE NEVER OFFERED CONFORMING UM/UIM COVERAGE.

But there is a chink in Nationwide's *Kelty* armor. While insurer and insured have the capacity to create a policy that conforms to Delaware law without any UM/UIM coverage, doing so requires the insured to explicitly reject UM coverage "in writing, on a form furnished by the insurer."[51] There are fewer formalities for

---

[47] *Id*. at 636-37.

[48] *Compare* DEL. CODE ANN., tit. 18 § 3902(a)(1) (2018) (requiring UM coverage as a component of all automobile insurance policies, but providing an exception for written opt-out by the insured) *and id.* at § 3902(b) (requiring automobile insurers to offer the option of UIM coverage to customers).

[49] Nationwide's Br., at 7-8. In contrast, UM coverage, if obtained, must be for "not be less than the minimum limits for bodily injury and property damage liability insurance provided for under the motorist financial responsibility laws of this State." DEL. CODE ANN., tit. 18 § 3902(a)(2) (2018).

[50] Nationwide's Br., at 8-9; Nationwide's Ltr. At 2-3.

[51] DEL. CODE. ANN., tit. 18 § 3902(a)(1).

- 11 -

rejecting UIM coverage, but the insurer is nevertheless obligated to *offer* a conforming UIM package.[52] This offer must be detailed enough to permit the insured to make an informed decision, must include a price term, and the insurer bears the burden of showing that the offer of UIM coverage was made and declined.[53]

Had Nationwide offered Mr. Velez UIM coverage conforming to § 3902(b), and had Mr. Velez affirmatively rejected that coverage, he and Nationwide could have thereby created a valid automobile insurance policy adhering to Delaware law yet offering no UIM coverage. If the provisions at issue were contained in a supplementary excess rider after conforming UM/UIM had been declined, Nationwide's *Kelty* theory might properly be before the Court. But Nationwide presents no signed form from Mr. Velez opting out of conforming UM coverage. Nor does Nationwide submit evidence demonstrating Mr. Velez declined a conforming UIM policy.

Where Delaware law requires an automobile insurer to offer an optional coverage provision and the insurer fails to do so, "the insurer is deemed to have made

---

[52]     *See* DEL. CODE ANN., tit. 18 § 3902(b) (2018) ("Every insurer *shall offer* to the insured the *option to purchase*" a conforming UIM policy) (emphasis added).

[53]     *Humm v. Aetna Cas. & Sur. Co.*, 1994 WL 465553, at *2 (Del. Super. Ct. Jul. 20, 1994), *aff'd,* 656 A.2d 712 (Del. 1995).

- 12 -

a continuing offer of such additional coverage to the insured" that "remains open even after an accident occurs."[54]  Thus, even if the Court accepted Nationwide's *Kelty* argument that the UM/UIM clause in the Policy is a nonconforming supplementary provision outside § 3902(b), having not shown that conforming coverage was offered and rejected likely permits Mr. Velez to retroactively reform the Policy post-accident to add precisely that conforming UM/UIM coverage Nationwide seeks to avoid.[55]

### D. NATIONWIDE'S *KELTY* GLOSS CANNOT OVERCOME *STARE DECISIS*.

Nationwide neither discloses any "urgent reason" nor unveils any "clear manifestation of error" justifying discard of this Court's now-well-settled § 3902(b) jurisprudence.[56]

Nationwide makes no showing that it offered conforming UM/UIM coverage which Mr. Velez rejected.  As such, Nationwide's argument that the UM/UIM coverage in the Policy is a supplementary rider § 3902(b) would simply subject the Policy to reformation to add conforming UM/UIM coverage with the precise

---

[54] *State Farm Mutual Auto. Ins. Co. v. Arms*, 477 A.2d 1060, 1064 (Del. 1984) (quoting and adopting as "a correct interpretation of Delaware law" *O'Hanlon v. Hartford Acc. & Indem. Co.*, 522 F.Supp. 332 (D. Del. 1981)).

[55] *Parson v. State Farm Mutual Auto. Ins. Co.*, 2011 WL 7052137, *3 (Del. Super. Ct. Dec. 30, 2011) (citing *Arms*); *Davis v. State Farm Mut. Auto. Ins. Co.*, 2011 WL 1379562, *5 (Del. Super. Ct. Feb. 15, 2011) (same).

[56] *Oscar George, Inc.*, 115 A.2d at 481.

benefits for Mr. Irizarry that Nationwide now seeks to challenge.  So the same result flows from both Nationwide's *Kelty* theory and adherence to the *Baunchalk* cases. Nationwide thus cannot demonstrate error of any kind, let alone a "clear manifestation of error."

Neither can Nationwide demonstrate "urgent reasons" to revisit *Baunchalk*. Like prior insurers in the innocent-passenger UIM cases, Nationwide argues that the *Baunchalk* rule makes coverage conforming to § 3902(b) more expensive and thereby disincentivizes it in a manner contrary to public policy.[57]  Had Nationwide in fact offered both conforming § 3902(b) coverage as well as a nonconforming alternative that excludes *Baunchalk* passengers, the difference in price between the provisions might possibly substantiate this oft-made policy argument and in the proper case justify to this Court or one higher to set *Baunchalk* aside.  But that didn't happen.

Lastly, *stare decisis* gains force when the legislature and private citizens have ordered their affairs in reliance on previous decisions.[58]  Contrary to Nationwide's assertion that "outside of the courtroom, there is no individual or societal reliance

---

[57]     Nationwide's Br., at 15.

[58]     *Hilton*, 502 U.S. at 202 (Noting that "*[s]tare decisis* has added force when the legislature, in the public sphere, and citizens, in the private realm, have acted in reliance on a previous decision, for in this instance overruling the decision would dislodge settled rights and expectations or require an extensive legislative response.").

on *Baunchalk,*" policyholders like Mr. Velez have precisely manifested and procured such an interest. Mr. Velez obtained the Policy from Nationwide more than a year after *Baunchalk* was handed down. At the time they formed the Policy, Nationwide and Mr. Velez are presumed to have been aware that the UM/UIM clause would combine with the PIP and BI coverage in the event of an accident injuring an innocent passenger of Mr. Velez.[59] When underwriting the policy, Nationwide is presumed to have taken such considerations in to account.[60] Mr. Velez could reasonably expect that he was purchasing insurance to cover his passengers according to the *Baunchalk* rule, and thus overturning the rule necessarily gives Nationwide a windfall of the premiums it collected for coverage of which it was later relieved.

## IV. CONCLUSION.

First, since *Baunchalk* was first decided the General Assembly has had almost four years to correct any interpretive error by this Court. It hasn't. Insurers like

---

[59] *See Koval v. Peoples*, 431 A.2d 1284, 1285 (Del. Super. Ct. 1981) ("In the law of contracts, it is a recognized principle that existing laws form a part of a contract."); *Trader v. Jester*, 1 A.2d 609, 613 (Del. Super. Ct. 1938) ("The rule is well established that the laws in force at the time and place of making the contract enter into, and form a part of it as if they had been expressly referred to, or incorporated in, its terms. The obligation of the contract is measured by the standard of the laws existing at the time of the making of the contract.").

[60] *See Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) ("Delaware adheres to the 'objective' theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party."). An objective, reasonable Delaware insurer would be aware of Delaware law, hence of the meaning and import of the UM/UIM provisions.

Nationwide have offered UM/UIM policies thereafter fully aware of the *Baunchalk* rule and presumably priced accordingly.

Second, Nationwide cannot escape Mr. Irizzary's claim via its alternative theory that the UM/UIM provisions at issue constituted some supplemental nonconforming coverage outside the scope of § 3902 as construed by *Baunchalk* without a showing that it offered, and Velez rejected, a conforming policy.

So, Nationwide's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

*/s/ Paul R. Wallace*
**Paul R. Wallace, Judge**